# EXHIBIT 4

1              IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                 FOR THE SOUTHERN DISTRICT OF ILLINOIS

2    _____
                                     )
3    **D.W.K., Jr. and parents Mary &**     )
     **Daniel Kaleta,**                     )
4                                    )
                                     )
5                  Plaintiff(s),     ) Case No. **14-847-NJR-SCW**
                                     )
6        vs.                         )
                                     )
7                                    )
     **ABBOTT LABORATORIES, INC.,**        )
8                                    )
                   Defendant(s).     )
9    _____)

10

11                   **TRIAL DAY 6**-a.m. session

12

13   BE IT REMEMBERED AND CERTIFIED that heretofore on  **3/9/2014**,

14   the same being one of the regular judicial days in and for the

15   United States District Court for the Southern District of

16   Illinois, **Honorable Nancy J. Rosenstengel**, United States

17   District Judge, presiding, the following proceedings were

18   recorded by mechanical stenography; transcript produced by

19   computer.

20

21

22

23

24        *REPORTED BY*:  **Molly N. Clayton, RPR, FCRR**, Official
     Reporter for United States District Court, SDIL, 750 Missouri
25   Ave., East St. Louis, Illinois 62201, (618)482-9226,
                      *molly_clayton@ilsd.uscourts.gov*

1        So a number of things happened on Friday, and I want

2    to talk about those first before we get into the other things

3    that we need to address.  And I think I needed to sort out

4    exactly what happened, and that's why I took the second motion

5    for mistrial under advisement, and I've given it significant

6    thought over the weekend.

7        So, first, as I see it, there are two issues that

8    arose from Dr. Oakley's testimony.  First is the admission of

9    irrelevant and potentially unfairly prejudicial evidence by his

10   mention of Thalidomide.  So the question is whether this

11   incident, in the context of the entire trial, is so serious as

12   to warrant a mistrial.

13       Now, there was the first statement in direct

14   examination, which we then went to sidebar on.  And as I

15   mentioned at first I thought a cautionary instruction at that

16   point might only seek to highlight the word.  But then after it

17   was said again, and Mr. Williams jumped up and told the witness

18   he shouldn't say that, I think the jury knows that the witness

19   said something he should not have.  And I think there's a need

20   to explain that to them.  And so for that reason I believe at

21   this point a curative instruction is important.  I presume that

22   the jury will follow an instruction to disregard inadmissible

23   evidence, just as I presume it will follow any other

24   instructions that I give to them.

25       So having reviewed the official transcript over the

1    weekend, I do not believe that the effect of this evidence

2    mentioned briefly on one of the first days of trial will be

3    devastating or cause prejudice to Abbott's substantial rights.

4    These statements do not create a real likelihood of preventing

5    the jury from evaluating all of the evidence that has been and

6    will be presented to them over the next several weeks fairly

7    and accurately such that Abbott has been deprived of a fair

8    trial.  Nonetheless, I'm going to strike that portion of

9    Dr. Oakley's testimony, and the jurors will be instructed that

10   this evidence is not part of their fact-finding mission and

11   that they should disregard it entirely.

12         Now, I have crafted a curative instruction that I will

13   have Deana pass out.  This is just my attempt at doing so, and

14   I welcome counsels' input.  So I'll let you be looking at that.

15   But as I said, there are really two issues, and the second one

16   is a violation of my order on the motion in limine.  And this I

17   view as much more serious than Dr. Oakley's brief mention of

18   Thalidomide.  So I went back and I read my orders and, really,

19   Friday was the second violation of my order on the motion in

20   limine.

21         The first was in voir dire, when Mr. Fibich mentioned

22   the size of Mr. Ball's law firm, which was an agreed motion in

23   limine, Plaintiffs Number 16, that we wouldn't refer to

24   resources of the firms, and I really didn't think there was any

25   dispute.  It was agreed.  So at this point I have serious

```
 1    concerns that plaintiffs either have not read, or at least have
 2    not absorbed the content of the orders on the motions in
 3    limine.  As I said, there were technically over 60-some motions
 4    in limine that I ruled on before trial, if you take
 5    plaintiffs', with all their subparts, and then Abbott I think
 6    had 22 standing alone.
 7            So at this point I'm going to believe that that's
 8    inadvertent and not intentional.  But as I said, I have grave
 9    concerns about whether plaintiffs are taking those rulings
10    seriously.  As to Friday, that was a violation of Abbott's
11    Motion in Limine Number 14, which just technically I reserved
12    ruling on parts of it, but I noted that the evidence is likely
13    not relevant.  And I said plaintiffs will not be allowed to
14    introduce evidence of drugs that have been withdrawn from the
15    market in order to argue that these drugs are in any way
16    similar to Depakote.  I think that's pretty clear.  And then I
17    also said, "For this reason, any mention of drugs that have
18    been withdrawn from the market should be brought to the Court's
19    attention before the evidence is offered or the testimony is
20    elicited."
21            Now, when we went to sidebar before Dr. Oakley made a
22    statement, I understood Mr. Strain's objection to be that he
23    was objecting that Dr. Oakley was going to testify that he
24    thought Depakote would be withdrawn because that was outside
25    the scope of his opinion.  But certainly plaintiffs' counsel
```

```
 1    should have known that that might be where he was going, but I
 2    mean I assumed, because lawyers have an obligation to tell
 3    their witnesses what evidence has been excluded, that
 4    Dr. Oakley knew that.  And the fact that plaintiffs' public
 5    health expert wasn't apparently counseled, that that evidence
 6    has been excluded, is simply unacceptable.
 7              Mr. Fibich's argument that because Thalidomide is back
 8    on the market today makes the testimony admissible is
 9    ridiculous.  It was clearly a violation of the order.  And why
10    I'm concerned that they haven't read it is because in voir dire
11    Mr. Fibich said he didn't know that size and resources of law
12    firms was excluded.  And on Friday Mr. Williams said he didn't
13    know that the witness was going to mention Thalidomide.  So
14    whether you think it is not intentional but it is certainly not
15    the -- not what I would expect from counsel.
16              So I guess now that we are getting ready to go to
17    Dr. Blume, Counsel, whoever wants to speak, has Dr. Blume been
18    advised about the motions in limine?
19              MR. BOUNDAS:  Your Honor, we have advised Dr. Blume
20    about the motions.  Specifically we spoke with her multiple
21    times about it and wrote out a list of things that were
22    appropriate.
23              THE COURT:  Okay.  Because now she is a labeling
24    expert and the post-1999 labels have been excluded.  Does she
25    understand that?
```

 1   and gentlemen.  I hope you had a good weekend and got some rest

 2   and fresh air and enjoyed the sunshine.  Everybody ready to go?

 3          Okay.  Well, before we begin today, I'm going to have

 4   a few instructions for you today, like I've done before, where

 5   I read something to you.  Then we will proceed with the

 6   testimony.

 7          Ladies and gentlemen, during his testimony,

 8   Dr. Oakley -- he was the live witness that we had here on

 9   Friday -- mentioned a drug that has been -- that was withdrawn

10   from the market several days ago -- okay.  I'm going to start

11   over.  It is Monday.

12          Ladies and gentlemen, during his testimony, Dr. Oakley

13   mentioned a drug that was withdrawn from the market several

14   decades ago.  That drug has absolutely nothing to do with this

15   case.  It is not relevant to any issue that you will be asked

16   to decide.  For that reason, I have stricken that portion of

17   Dr. Oakley's testimony from the record.  It is not evidence in

18   this case and must not be considered.

19          Now, I think we are going to the -- we ended Friday

20   with a video deposition of a Michael Murray, and we have just

21   another portion of that to play for you at this point.

22       *(Exhibit Number 2477, corrected portion, played to the jury)*

23          *THE COURT:*  Okay.  That's it?

24          *MR. BALL:*  Yes.

25          *THE COURT:*  So, ladies and gentlemen, I have now

1

2                                      -oOo-

3                           REPORTER'S CERTIFICATE

4        I, Molly N. Clayton, RPR, FCRR, Official Court Reporter

5    for the U.S. District Court, Southern District of Illinois, do

6    hereby certify that I reported with mechanical stenography the

7    proceedings contained in pages 1181 - 1329; and that the same

8    is a full, true, correct and complete transcript from the

9    record of proceedings in the above-entitled matter.

10

11              DATED this 10th day of March, 2015.

12

13                              s/Molly Clayton, RPR, FCRR

14                              _____

15

16

17

18

19

20

21

22

23

24

25

Direct Examination - Blume, Cheryl