# EXHIBIT 2

```
                    UNITED STATES OF AMERICA
                   SOUTHERN DISTRICT OF ILLINOIS


IN RE DEPAKOTE:                    )
                                   )
STACY BARTOLINI, individually      )
and as parent and next friend      )
of H.B., a minor,                  )
                                   )
              Plaintiff(s),        )
                                   )
v.                                 )  Case No. 3:17-cv-1146-SMY
                                   )
ABBOTT LABORATORIES, INC.,         )  Lead Case 3:12-cv-52-NJR
                                   )
              Defendant.           )


          TRANSCRIPT OF FINAL PRETRIAL CONFERENCE

          BEFORE THE HONORABLE STACI M. YANDLE
              UNITED STATES DISTRICT JUDGE

                    November 15, 2017




REPORTED BY:      Christine Dohack LaBuwi, RMR, CRR
                  Official Court Reporter
                  301 West Main Street
                  Benton, Illinois  62812
                  (618) 439-7725
                  Christine_Dohack@ilsd.uscourts.gov


Proceedings recorded by mechanical stenography, produced
by computer-aided transcription.
```

```
 1              5.   What is the rate of disease after
 2   exposure?
 3              THE REPORTER:  Excuse me.
 4              MR. WILLIAMS:  I'm prone to do that.  Thank you.
 5              And 6.  How many children have been affected?
 6              And so you -- that gives you a little bit of, of
 7   what he thinks are important guidelines.  And he goes
 8   through in that supplemental report then how he comes to
 9   his conclusions and all.
10              THE COURT:  This is, this is, this is still the
11   question for me, Mr. Williams.  The only relevance to that
12   particular opinion that Depakote is one of the Top Three
13   -- the only relevance to that particular opinion is,
14   again, to give some context and background to the jury so
15   that they could understand the dangerousness or the
16   devastating effects associated with that drug, which he's
17   going to testify to.
18              The problem is, is that in your briefings you
19   indicate that the basis for that opinion that he intends
20   to give is, is actually the rate at which Depakote causes
21   birth defects and the severity.  In other words, he's
22   saying it's one of the Top Three based on the rate of
23   which it causes birth defects and the severity of the
24   birth defects that it causes.
25              I have no problems with his testimony being that
```

```
 1    it's -- that it's dangerous and the devastating effects
 2    and him communicate -- I think he can communicate that to
 3    the jury, again, by evidence which you are calling the
 4    basis.  In other words, to give testimony and to explain
 5    to the jury the rate of, at which Depakote causes birth
 6    defects, and to give them information or testify as to the
 7    severity of some of those effects.
 8           The problem comes in, is when he gives an opinion
 9    that says *it's one of the Top Three most dangerous drugs
10    from this standpoint*, without any scientific basis for it,
11    when it's just simply based on his experience -- and I'm
12    saying he's qualified, he's got the experience -- but it's
13    a subjective opinion.  So it's a qualitative -- it appears
14    to be a qualitative opinion, but it's actually on a
15    quantitative basis.
16           Because you're, you're saying it's one of the Top
17    Three dangerous drugs based on a comparison.  That then
18    puts the -- that opens the door then for the defendants to
19    put on evidence as to the, the similarities or, or what's
20    not similar about these other three drugs that he's
21    referencing.  And then we get into a trial within a trial
22    based on what's the most dangerous drugs.
23           To me, that -- my problem is, I believe the
24    effects of that evidence would be much more prejudicial
25    than it is probative, because the only probative value is,
```

1   again, as background for how devastating the effects of
2   the drug is. Which, because of his experience and his
3   expertise, he's in a position to give the jury a lot of
4   different -- I mean, information -- he can communicate
5   that to them in so many different ways that it's not --
6   that doesn't run into this issue.
7           I, I actually think -- and that's my problem with
8   it. I know Judge Rosenstengel in the past has ruled that
9   it's a qualitative and not a quantitative opinion. I
10  happen to disagree. I think anytime that you, you rank
11  something and you give a ranking to it, you gotta have
12  some type of medical or scientific evidence to, to back
13  that up. It can't be just based on your subjective
14  opinions, based on your expertise and your experience. So
15  I think it's kind of -- that's what makes it misleading.
16          MR. WILLIAMS: Well, if I may, Your Honor, and
17  again, I would direct you to Tab 4-B, his August 31, 2017,
18  report. And it goes through his process for determining
19  that.
20          THE COURT: Okay.
21          MR. WILLIAMS: And as -- I don't know if the
22  Court's had a chance to read that. But if you -- when you
23  do, you'll see that there are really accepted amongst
24  teratologists that there's at least 20 -- about -- around
25  -- approximately 20 human teratogens. I'm not talking

1  situation.
2      All the anti-epileptic drugs we commonly refer to
3  as AEDs, apparently all of them have some teratogenic
4  effect.  Okay?  And Abbott tries to say, based on prior
5  experience, that all of these drugs are the same and that
6  they all cause problems.
7      And what we want to show is, not only is it the
8  worst AED -- and we'll show evidence from them where it's
9  four times worse than the other AEDs -- not only is that
10 true but it's many, many times worse, and it gets up in
11 the category of the three worst drugs on the market.
12     If the Court -- and I hope the Court will allow us
13 to show that, you know, how the other manufacturers --
14 looking at the conduct of other manufacturers in this
15 situation, in Thalidomide and Accutane, manufacturers have
16 what's called an "I pledge" program and a Steps program.
17 So -- and I had a daughter who took Accutane.  And what
18 the manufacturers do in this situation, Your Honor, it's
19 like, if you want to go on Accutane for acne, you have to
20 get a blood test to make sure you are not pregnant; you
21 have to come back a couple weeks later, get another blood
22 test; and then you have to pledge that "I will not" -- "I
23 will be on birth control and I will not be pregnant while
24 I take this drug."  And then, and then every time you want
25 to get it refilled, you have to call in and pledge orally

```
 1              THE COURT:  Right.
 2              MR. BALL:  So that should be e-mailed?
 3              THE COURT:  E-mail to Michelle.
 4              MR. SMITH:  That really was the last thing, Your
 5    Honor.
 6              MR. BALL:  That is.
 7              THE COURT:  All right, Stacie, recess this puppy.
 8              THE CLERK:  All rise.  Court is in recess.
 9              (Court adjourned at 3:55 p.m.)
10
11
12
13                       REPORTER'S CERTIFICATE
14         I, Christine Dohack LaBuwi, RMR, CRR, Official
15    Court Reporter for the U.S. District Court, Southern
16    District of Illinois, do hereby certify that I reported
17    with mechanical stenography the proceedings contained in
18    pages 1-154; and that the same is a full, true, correct
19    and complete transcript from the record of proceedings in
20    the above-entitled matter.
21
22              DATED this 16th day of November, 2017
23
24                        s/Christine Dohack LaBuwi, RMR, CRR
                          _____
25                        Christine Dohack LaBuwi, RMR, CRR
```