# Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
     E.G., a minor, BY CHRISTINA   )
 3   RAQUEL, individually as parent)
     and next friend of E.G.,      )
 4                                 )
                   Plaintiff,      )
 5                                 )
         vs.                       ) Case No. 15-cv-702-NJR
 6                                 )
     ABBOTT LABORATORIES, INC.,    )
 7                                 ) May 23, 2017
                   Defendant.      )
 8
              JURY TRIAL DAY/VOLUME II - P.M. SESSION
 9          BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
               UNITED STATES DISTRICT COURT JUDGE
10
                          APPEARANCES
11
     FOR PLAINTIFF:              John E. Williams, Esq.
12                               John T. Boundas, Esq.
                                 Williams Kherkher
13                               8441 Gulf Freeway, Suite 600
                                 Houston, TX  77017
14                               (713) 230-2200

15   FOR DEFENDANT:              Joel H. Smith, Esq.
                                 Bowman and Brooke LLP
16                               1441 Main St., Suite 1200
                                 Columbia, SC  29201
17                               (803) 726-7422

18                               Dan H. Ball, Esq.
                                 Bryan Cave - St. Louis
19                               211 N. Broadway, Suite 3600
                                 St. Louis, MO  63102
20                               (314) 259-2000

21   REPORTED BY:                Laura A. Esposito, RPR, CRR
                                 U.S. District Court
22                               750 Missouri Avenue
                                 East St. Louis, IL  62201
23                               (618) 482-9481
                                 Laura_Esposito@ilsd.uscourts.gov
24
             Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.
```

 1    has read the information, because this information is out

 2    there and well-known, and because Abbott has put it out

 3    there, she has read it and she says, "These are the risks."

 4         The best evidence that these doctors knew this was

 5    what they told her.  They told her about the risks of birth

 6    defects.  And Dr. Meer, when she describes it -- you're not

 7    going to hear Dr. Meer in the plaintiff's case but we'll

 8    play her video for you.  Listen to what she says.  She gives

 9    a thorough, complete description of exactly what she would

10    tell patients at this time period, and her record says that

11    she did this.  Her medical record said she told this

12    patient, so obviously she has been well-informed.

13         But it didn't work as well as it had in the past

14    because she was heavy.  She went back.  Dr. Giese had her go

15    up to 2,000 milligrams.  She went up to 2,000 milligrams and

16    it caused some problems for her.  But Dr. Giese obviously

17    knew about risks.  He had her sign the consent form.  There

18    is a form at El Hogar that they sign and it says the risks

19    have been explained to me, so obviously, again, he's making

20    a prescription of an increase of a thousand milligrams.

21    He's going to make sure that she's re-warned because he

22    knows this risk.

23         Eleven days later she comes back.  She's been on a

24    bus and defecated in her pants because of an upset stomach,

25    which can be a risk of Depakote.  And she's defecated in her

                    Defendant's Opening Statement

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
     E.G., a minor, BY CHRISTINA   )
 3   RAQUEL, individually as parent)
     and next friend of E.G.,      )
 4                                 )
                  Plaintiff,       )
 5                                 )
        vs.                        ) Case No. 15-cv-702-NJR
 6                                 )
     ABBOTT LABORATORIES, INC.,    )
 7                                 ) June 7, 2017
                  Defendant.       )
 8
                  JURY TRIAL DAY/VOLUME XI
 9       BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
            UNITED STATES DISTRICT COURT JUDGE
10
                       APPEARANCES
11
     FOR PLAINTIFF:           John E. Williams, Esq.
12                            John T. Boundas, Esq.
                              Williams Kherkher
13                            8441 Gulf Freeway, Suite 600
                              Houston, TX  77017
14                            (713) 230-2200

15   FOR DEFENDANT:           Joel H. Smith, Esq.
                              Bowman and Brooke LLP
16                            1441 Main St., Suite 1200
                              Columbia, SC  29201
17                            (803) 726-7422

18                            Dan H. Ball, Esq.
                              Bryan Cave - St. Louis
19                            211 N. Broadway, Suite 3600
                              St. Louis, MO  63102
20                            (314) 259-2000

21   REPORTED BY:             Laura A. Esposito, RPR, CRR
                              U.S. District Court
22                            750 Missouri Avenue
                              East St. Louis, IL  62201
23                            (618) 482-9481
                              Laura_Esposito@ilsd.uscourts.gov
24
          Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.
```

```
 1    pregnancy, and said she discussed other treatment options.

 2    Okay.  How much more information does someone need to say

 3    that they would have done something differently?  This is

 4    spina bifida we're talking about.

 5           And I want you to know, I'm not saying she's done

 6    something wrong.  I'm saying she probably did something

 7    right to take care of herself.  It was probably a good

 8    decision to take this medication.

 9           Then she goes to see Dr. Giese.  And while

10    Dr. Giese doesn't have a great memory of it, we do know that

11    on the same day she saw Dr. Giese she signed a consent form.

12    Now, Dr. Franklin said it was a fixed rule that nurses went

13    over these with the patients, so I'm assuming that that was

14    done here, but she did sign it.  And, again, risk and

15    benefits were talked about, and possible alternative

16    treatments.  That's two times in a row in four days.

17           And then she goes to see Dr. Han.  And what does

18    Dr. Han say?  The same thing really.  "I reviewed different

19    options with her."  What did he testify?  He said, "I would

20    have told her the risks and benefits of each and the risks

21    and benefits of staying on Depakote."  And he didn't think

22    it was going to work.  He thought dropping down to

23    1500 milligrams would not be therapeutic.  He didn't know

24    that for a year she'd been on a thousand and 1250 and had no

25    evidence of mania.  But she knew.  She knew her medications.
```

Defendant's Closing Argument

 1    She knew what she was doing.  She is no shrinking violet

 2    when it comes to telling her doctors what she needs to do.

 3         What does she do?  She elected to try the

 4    1500 milligrams that he had suggested -- that she had

 5    suggested.  And what did he say he would have told her that

 6    he knew at that time?  He said he would have told her that

 7    the two specific alternatives that he offered, Seroquel,

 8    which is antipsychotic -- she was already on two -- and

 9    Lamictal, which is the other mood stabilizer that she

10    decided not to take, based on his description of what their

11    benefits were as well as their risks.  He knew.

12         So in all three situations she was warned.  These

13    doctors knew enough about the risk of this medication not

14    just to say in a deposition, *I know about it*, but to

15    document in their records three times within 15 days that

16    they actually proposed alternatives, gave warnings.  Signed

17    consent forms.  It's all right there.

18         But you heard her deposition and you heard this

19    constant refrain:  "Could be.  I don't recall."  Every time

20    she was asked, not just about Depakote side effects or

21    Depakote risks -- and there are other risks, risks to her,

22    risks to the baby from these other medications -- she said,

23    "Could be.  I don't recall," over and over and over again.

24    Why is that?  Why is that?  Because if she were to tell us

25    that she does remember, what would that do today?  Would we

Defendant's Closing Argument

1    be here today?  Is this credible?

2          Now, I've told you, I'm not blaming Ms. Raquel for

3    taking this medication.  I want you to understand her.  I

4    also want you to understand something else:  She's got a lot

5    to gain by not remembering.

6          So she goes back to El Hogar in 2008.  She sees the

7    same doctor.  You know, I'm not sure it makes sense that you

8    would go back to the same doctor who had failed to tell you

9    about a spina bifida risk.  I'm not sure that makes sense to

10   start with, but may have.  And her options were probably

11   limited, frankly, right?  But wouldn't you expect her to

12   walk in and see Dr. Franklin, her regular doctor who she's

13   confided in over the most intimate details of her life and

14   say, *Dr. Franklin, why didn't you tell me?  I have a child*

15   *now who's -- why didn't you tell me?*  But she didn't.  She

16   tells us that the reason she did -- in her deposition she

17   said, "I just never went back and asked them."  She's being

18   treated by the same doctor.  That's false.  She did go back.

19   But she never asked.  Wouldn't you?  I mean the most

20   impressive thing to ever happen in your life, to have a

21   child who's disabled, wouldn't you go back and say --

22   wouldn't you be feeling like, I've been deceived, I

23   didn't -- you didn't do your job, you committed malpractice,

24   and you'd go back and say, *Hey, why did you do that?  Why*

25   *didn't you tell me?*  Unless they did.

Defendant's Closing Argument