# EXHIBIT 1

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB  Document 55-12  Filed 01/08/18  Page 2 of 11  Page ID #2475

**Page 2149**

```
             UNITED STATES OF AMERICA
             SOUTHERN DISTRICT OF ILLINOIS

D.W.K., Jr., and parents    )
Mary and Daniel Kaleta,     )
                            )
            Plaintiffs,     )
 v.                         )  No. 3:14-cv-847-NJR
                            )
Abbott Laboratories, Inc.,  )
                            )
            Defendant.      )


         TRANSCRIPT OF JURY TRIAL PROCEEDINGS
                 DAY 9 - P.M. SESSION

       BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
              UNITED STATES DISTRICT JUDGE

                    March 12, 2015









REPORTED BY:   Christine A. Dohack, RMR, CRR,
               Official Court Reporter
               301 West Main Street
               Benton, Illinois  62812
               (618) 439-7725
               Christine_Dohack@ilsd.uscourts.gov

Proceedings recorded by mechanical stenography, produced
by computer-aided transcription.
```

**Page 2150**

```
APPEARANCES:

FOR PLAINTIFF:   John Eddie Williams, Esq.
                 John T. Boundas, Esq.
                 WILLIAMS KHERKHER HART BOUNDAS, LLP
                 8441 Gulf Freeway, Suite 600
                 Houston, TX  77017
                 (713) 230-2330

                 Kenneth T. Fibich, Esq.
                 FIBICH HAMPTON LEEBRON
                    BRIGGS & JOSEPHSON, LLP
                 1150 Bissonnet
                 Houston, TX  77005
                 (713) 751-0025

                 Phillip L. Sampson, Jr., Esq.
                 BRACEWELL & GIULIANI LLP
                 7111 Louisiana, Suite 2300
                 Houston, TX  77002
                 (713) 221-1258

FOR DEFENDANT:   Dan H. Ball, Esq.
                 BRYAN CAVE, LLP
                 One Metropolitan Square
                 211 N. Broadway, Suite 3600
                 St. Louis, MO  63102
                 (314) 259-2000

                 Paul F. Strain, Esq.
                 Michael B. MacWilliams, Esq.
                 VENABLE LLP
                 750 East Pratt Street, Suite 900
                 Baltimore, MD 21202
                 (410) 244-7717
```

**Page 2151**

```
                    I N D E X
                    WITNESSES

ALL WITNESSES:                                    PAGE:

For Plaintiff:

  MARY KALETA:
    Direct Examination by Mr. Fibich            2152:22
    Cross-Examination by Mr. Strain             2213:7
    Redirect Examination by Mr. Fibich          2269:22
    Recross-Examination by Mr. Strain           2280:11

  Cheri Spath:
    Video Designations by - Exhibit No. 2495    2285:4
```

**Page 2152**

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB Document 55-12 Filed 01/08/18 Page 3 of 11 Page ID #2476

2157

2158

2159

2160

1 take your medications as recommended?
2 A. Yes, I do.
3 Q. Has any medication ever totally controlled your
4 seizures?
5 A. No.
6 Q. The jury has heard, and I think some testimony,
7 but you take multiple combinations at different times in
8 your life; correct?
9 A. Correct.
10 Q. Has there been any combination that has eliminated
11 your seizure issues?
12 A. No.
13 Q. Since you are -- you are currently on Depakote; is
14 that correct?
15 A. Yes, I am.
16 Q. And you take Depakote with another medication?
17 A. Yes, I do.
18 Q. And what is that medication?
19 A. Tegretol and clonazepam.
20 Q. So you have a three-drug combination now, one of
21 which is Depakote?
22 A. Yes.
23 Q. And would you please describe for the jury the
24 type of seizures that you have.
25 A. Okay. Well, one is a small seizure where I just

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB Document 55-12 Filed 01/08/18 Page 4 of 11 Page ID #2477

2165

2166

2167

2168
1 Q. Okay. And do you know why you were having that
2 seizure activity?
3 A. I was pregnant.
4 Q. So you were six months pregnant with      ; is
5 that correct?
6 A. Yes.
7 Q. Do you recall anything that Dr. Taber told you
8 about Depakote?
9 A. No, I do not.
10 Q. Do you even remember Dr. Taber?
11 A. No, I do not.
12 Q. If Dr. Taber were to walk through those doors,
13 could you recognize him?
14 A. No, I cannot.
15 Q. Why are you still -- are you on -- well, let me
16 ask this question: When Dr. Taber put you on Depakote,
17 did you take Depakote through the pregnancy with     ?
18 A. Yes, I did.
19 Q. Did you stay on Depakote from 1993 until present?
20 A. Yes, I did.
21 Q. Have you taken Depakote every day of your life
22 since 1993 when Dr. Taber put you on Depakote?
23 A. Yes, I have.
24 Q. And you are currently on Depakote today?
25 A. Yes, I am.

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB Document 55-12 Filed 01/08/18 Page 5 of 11 Page ID #2478

2169

```
 1  Q.    Tell the jury why you are still on Depakote today.
 2  A.    Well, for one, to switch a drug from another drug,
 3  it raises seizure activity and it can be very dangerous.
 4  And another thing is, I have to take care of my son.  I'm
 5  the only one that can take care of his medical needs,
 6  doing the measurements and everything he needs to be done.
 7  So, I'm the only one that can take care of him.  I do not
 8  have time to go in the hospital and change my medicine.
 9  Q.    Is Depakote and the combination -- well, let me
10  ask it this way.  Sorry to start over.
11        Do you take Depakote today?
12  A.    Yes, I do.
13  Q.    What else do you take?
14  A.    I take Tegretol and clonazepam.
15  Q.    And who added the Tegretol back in?
16  A.    I believe that would be McGonagle.
17  Q.    So you were on Tegretol, you were pregnant with
18        , had some seizures.  He took you off Tegretol, put
19  you on Depakote.  Correct?
20  A.    Yes.
21  Q.    Then you come down and you are pregnant with
22        .
23  A.    Yes.
24  Q.    And you go back on Tegretol.
25  A.    Yes.
```

2170

2171

2172

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB   Document 55-12   Filed 01/08/18   Page 6 of 11   Page ID #2479

2197

2199

2198
```
 1  himself, if you know.
 2  A.     He hates it.  He hates that he has to go and cath
 3  himself.  He says he wished he could be like        and
 4  just go like
 5  Q.     You okay?
 6  A.     Yeah.
 7  Q.     Let's get through it, okay?
 8  A.     Okay.
 9  Q.     Do you think        -- I mean        needs
10  psychological care?
11  A.     Yeah, I do.
12  Q.     Can you afford that?
13  A.     No, I can't.
14  Q.     References have been made to the therapist that
15  has come to your house, and we're going to look at some
16  videos of that in a minute.  Is the therapist still
17  working with        -- I mean, excuse me --        ?
18  A.     No.  Since my husband's been unemployed, we lost
19        's therapist.  And he really needs therapy.
20  Q.     And       is here with you and your husband during
21  this trial; is that correct?
22  A.     Yes.  I have to take care of him.
23  Q.     And have you noticed any problems with
24  because he's not getting his therapy?
25  A.     Yes.  His muscles are tightening and his muscles
```

2200

2211

1 minutes.
2     MR. STRAIN: Thank you, Your Honor.
3     (Court recessed from 2:06 p.m. to 2:21 p.m.)
4     (Proceedings continued at the bench, outside the
5 hearing of the jury.)
6     MR. STRAIN: I didn't want to do this without
7 advising the Court. She said since her husband got
8 unemployed, they lost his insurance. His physical
9 therapist for 15 years, they have lost, and he really
10 needs it and they have no way to get it. I'm entitled to
11 ask what they have done to investigate forms of assistance
12 to get that physical therapist back. She has those --
13 case law -- and I have it right here, but there is case
14 law on it that once someone opens the door like that and
15 says because of lack of funds, they can't get a needed
16 service, they're not -- then I'm entitled to inquire into
17 what they have done to attempt to get public assistance.
18 And there is public assistance.
19     And they also said they couldn't afford
20 counseling, so there's two different things in, you know,
21 the record. She said one of them with tears. So, it's a
22 very emotional thing. It's in the context of this young
23 man needing emotional counseling because he's threatening
24 to shoot himself and couldn't be more prejudicial for the
25 jury thinking, unless they give him an award, he's going

2210

2212

1 to be without counseling and be at risk of suicide. It's
2 very prejudicial.
3     THE COURT: So what you want to do is what she's
4 done to inquire?
5     MR. STRAIN: What she's done to inquire and I
6 don't know what she's going to say, and then we'll address
7 that with our life care plan people if things are
8 available to her. We have to now.
9     MR. FIBICH: Well, Your Honor, I don't --
10     MR. STRAIN: They're going -- then the jury's
11 going to think if they don't give them an award, the young
12 man's at risk. It's a terrible thing.
13     MR. FIBICH: Your Honor, I don't think it opened
14 the door. Basically she said her husband's unemployed.
15 They don't have their therapist. She doesn't have the
16 money to pay for it. The fact of the matter is, he's
17 going to find employment. So there's no benefits. He
18 gets into total speculation about what's out there. If he
19 wants to ask her if -- I mean, what is it you want to ask
20 her?
21     MR. STRAIN: I'm going ask her what she's done to
22 investigate different programs.
23     THE COURT: And I think that's reasonable. As
24 long as it doesn't go too far, you're entitled to that.
25     MR. STRAIN: Thank you very much, Your Honor.

No. 3:14-cv-847-NJR in re: D.W.K., Jr., et al. v Abbott Laboratories, Inc.
03/12/2015 - trial day 9 - p.m. session
Case 3:17-cv-00783-NJR-MAB   Document 55-12   Filed 01/08/18   Page 8 of 11   Page ID #2481

2217

2218
1  and four years ago?
2  A.    Yeah.
3  Q.    Does that sound about right?
4  A.    (Nonverbal response.)
5  Q.    Okay. And nothing like that since?
6  A.    No. But he's still at home.
7  Q.    Okay. Now, you mentioned that you wanted
8  counseling for     and you wanted to get the therapist
9  back, but your husband lost his insurance, his work and
10 the insurance with it; right?
11 A.    Yes.
12 Q.    So -- and that happened in January, I think, when
13 your husband lost his job? The first of the --
14 A.    Yes.
15 Q.    So, have you and your husband looked into what
16 the, kind of public assistance you could get?
17 A.    We're doing it right now.
18 Q.    You're --
19 A.    We're in the process right now.
20 Q.    What public assistance are you looking into that
21 will help    ?
22 A.    It was called All Kids. I am having help through,
23 the state social work is helping me try and get insurance
24 on   .
25 Q.    And how about, has she told you about the Illinois

2219
1  program called --
2         MR. FIBICH: Excuse me, Your Honor. I want to
3  object to the relevancy of this, calls for speculation,
4  violates the motion in limine, violates what Mr. Strain
5  says we were going to talk about.
6         MR. STRAIN: It does not.
7         THE COURT: Objection will be overruled.
8  Q.    (BY MR. STRAIN) I'm sorry. Let me just ask: Has
9  she talked to you about or have you looked into Illinois
10 program called SAS, for children like    or needs like
11 that?
12 A.    There is a program called DSCC.
13 Q.    Have you looked into that?
14 A.    I have that.
15 Q.    Okay. Okay. So --
16 A.    But that's only to do with the spina bifida.
17 Q.    Okay. I don't want to get into too much detail.
18 I don't think we need to on this because there are people
19 who specialize in this. I don't. But you are looking
20 into getting assistance for     as you should, as he
21 needs; right?
22 A.    Correct.
23 Q.    Okay. Good. Now, just so you know where I'm
24 going, Mrs. Kaleta, I am going to ask, now ask you
25 questions about a couple of things Mr. Fibich asked you

2267

```
 1  Q.    Five.  Tegretol?
 2  A.    Yes.
 3  Q.    Zarontin?
 4  A.    Yes.
 5  Q.    And what else, Mrs. Kaleta?
 6  A.    Dilantin.
 7  Q.    Dilantin?
 8  A.    Phenobarbital.  And I'm on clonazepam now.
 9  Q.    And Depakote.  Right?
10  A.    I think you already said Depakote.
11  Q.    Tegretol, Zarontin, clonazepam, Dilantin,
12  Phenobarbital and Depakote.  Weren't, weren't there
13  others?
14  A.    No.
15  Q.    But six is a lot.  So, that's six.  A lot of those
16  you tried before you settled on to Depakote in 1993;
17  correct?
18  A.    Yes.
19  Q.    Your doctors were always trying to find what was
20  the best -- nothing's going to be perfect -- what was the
21  best for you; right?
22  A.    Yes.
23  Q.    Okay.  You -- I think you went into this with Mr.
24  Fibich.  You dropped out of school in the 9th or 10th
25  grade; right?
```

2266

2269

```
 1  A.     I do not remember.
 2  Q.     You started on the Depakote in 1993.  And that's
 3  22 years ago.  There's not a day since then you haven't
 4  been using Depakote; right?
 5  A.     I am on Depakote, yes.
 6  Q.     You have found it to be very important to help you
 7  lead the life you want to lead; is that correct?
 8  A.     Am I somewhat controlled?  Yes.
 9  Q.     Well, let me just ask.  And if you don't want to
10  answer this, just tell me.  I asked whether you find it to
11  be very important to help you lead the life you want to
12  lead.  Has Depakote been very important to you to lead the
13  life you want to lead for the last 22 years?
14  A.     I really don't know how to answer that.
15  Q.     All right.  I'll withdraw the question then and I
16  thank you very much.
17         MR. FIBICH:  Keep your seat.
18         THE WITNESS:  Pardon me?
19         MR. FIBICH:  Keep your seat.  We're going to talk.
20         THE WITNESS:  Okay.
21                    REDIRECT EXAMINATION
22  BY MR. FIBICH:
23  Q.     You and I can agree that Mr. Strain is a pretty
24  smart fella, isn't he?
25  A.     Yes.
```

2270

2272

```
                                    REPORTER'S CERTIFICATE

     I, Christine A. Dohack, Registered Merit Reporter
and Certified Realtime Reporter in and for the United
States District Court for the Southern District of
Illinois, do hereby certify that I was present at and
reported in machine shorthand the proceedings in the
above-mentioned court; and that the foregoing transcript
is a true, correct, and complete transcript of the
electronic recording.
     I further certify that I am not an attorney for,
nor employed by, nor related to any of the parties or
attorneys in this action, nor financially interested in
the action.
     I further certify that this transcript contains
pages 2149-2296 and that this reporter takes no
responsibility for missing or damaged pages of this
transcript when same transcript is copied by any party
other than this reporter.
     IN WITNESS WHEREOF, I have hereunto set my hand at
Benton, Illinois, this 12th day of March, 2015.

                    s/Christine A. Dohack, RMR,  CRR
                    _____
                    Christine A. Dohack, RMR, CRR
```