# EXHIBIT 15

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

B.F., et al.,                       )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )  No. 4:12-CV-1760-CAS
                                    )
ABBOTT LABORATORIES, INC., et al.,  )
                                    )
            Defendants.             )
```

**PRETRIAL CONFERENCE**

**BEFORE THE HONORABLE CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

**MAY 19, 2016**

**APPEARANCES:**

For Plaintiffs:        Daniel A. Raniere, Esq.
                       Justin M. Durel, Esq.
                       **AUBUCHON, RANIERE & PANZERI, PC**

                       John T. Boundas, Esq.
                       John Eddie Williams, Jr., Esq.
                       Brian A. Abramson, Esq.
                       Margot G. Trevino, Esq.
                       **WILLIAM KHERKHER**

                       George Erick Rosemond
                       **ROSEMOND LAW, P.C.**

For Defendants:        Dan H. Ball, Esq.
                       Stefan A. Mallen, Esq.
                       **BRYAN CAVE LLP**

                       Kathleen S. Hardway, Esq.
                       Paul F. Strain, Esq.
                       James C. Fraser, Esq.
                       Stephen E. Marshall, Esq.
                       **VENABLE LLP**

*REPORTED BY:*         *Gayle D. Madden, CSR, RDR, CRR*
                       *United States District Court*
                       *111 South Tenth Street, Third Floor*
                       *St. Louis, MO  63102     (314) 244-7987*

1  That's too long.

2      MR. BALL: Okay.

3      THE COURT: See, you keep -- you've got to remember
4  my major rule, the Lee Trevino rule.

5      MR. BALL: Right.

6      THE COURT: Yeah. Miss it quick.

7      MR. BALL: Miss it quick.

8      THE COURT: See, that's too long.

9      MR. BALL: I actually used that yesterday.

10     THE COURT: You know. I mean, you know, the Clerk's
11 Office, the jury staff, they were all upset, you know, and I
12 said, "Well, we can -- you know, don't worry about it." You
13 know, they've gone and met with the post office. They were
14 holding the mail. So we got no responses to who could be here
15 for two to three weeks. And so we were then going to send out
16 the second questionnaire, but, you know, others had to go down
17 to the post office when they got the runaround, and then they
18 finally came up with the mail, and so since then, the Clerk of
19 the Court and others have gone down there to try to resolve
20 the situation with them holding our mail. Please. So that is
21 that. We'll just deal with it as we can. It shouldn't take
22 too long, but we'll see. You know, we don't know. We'll see.

23     Now, let's see. We'll start with these Plaintiffs'
24 motions. Plaintiffs have a motion to exclude evidence
25 regarding any negligence or fault of the Forbes or Dr. Mallya.

1         Hmm, got bugs crawling up here.

2         In this case, Plaintiffs claim that Abbott failed to
3    adequately warn Beth Forbes or her prescribing doctor.  Now,
4    you know, Missouri, comparative fault.  That's denied.

5         Second, Plaintiffs seek to exclude evidence regarding
6    alternative causes of              ' spina bifida, such as
7    family history and genetics and so forth and so on.  Now, that
8    is denied.  Now, when we get to this thing about an aunt
9    committing suicide and perhaps because of bipolar disorder, I
10   mean that's kind of like hearsay.  I mean, I don't know.
11   Maybe that part is out.  Anybody want to talk about that?

12         LAW CLERK:  No. 3, Judge?

13         THE COURT:  Pardon?

14         LAW CLERK:  No. 3?

15         THE COURT:  Yeah, that's 2 and 3.  Well, the
16   alternative causes -- yeah, that motion of Plaintiffs is
17   denied.  You can present these alternative causes, and I don't
18   know about this.  I don't know what degree this evidence is of
19   a cousin with spina bifida.  I guess you have evidence of
20   that.  But No. 3, I'm inclined to grant that also, but "likely
21   because of undiagnosed bipolar" -- I mean, what's -- what's
22   the theory here?  Is it likely, or is it undiagnosed?  What's
23   this?

24         MR. BALL:  Your Honor, I think we can avoid saying
25   that somebody committed suicide, you know, if that's viewed to

1  be too -- the aunt committing suicide.  The other part about

2  general family history of bipolar disorder and mental illness

3  is important to her need for this medication.  So we can avoid

4  the -- if the concern is an aunt committing suicide, that that

5  might be a problem, we can avoid -- we don't have to get into

6  that.

7          THE COURT:  Okay.  We're fine with that?

8          MR. BOUNDAS:  Your Honor, we don't see why we need to

9  talk about her family's history of mental illness.  Ms. Forbes

10 is bipolar.  Everybody agrees to it.  As a bipolar patient,

11 she needs medication.  So why are we talking about --

12         THE COURT:  Well, they're saying other causes.  Other

13 causes of the spina bifida, I mean, and, you know, this whole

14 situation that she -- it likely has to do with her genetic

15 makeup.  Different.  I'm going to allow that.

16         Okay.  Plaintiffs want to exclude evidence of

17 Mrs. Forbes' postbirth Depakote use.  Well, there was

18 something else about that that I saw that -- where was this?

19 I would be inclined to allow this in.  So that motion is going

20 to be denied, but there was something, some other motion --

21 I'm missing it now -- where I think Plaintiffs in response to

22 Defendant's motion were saying that they -- if this

23 post-Depakote use wasn't brought in, they would -- they would

24 not bring in something else, and I'm trying to see where that

25 is here.

1  to warn.  She says, "If I had known, I wouldn't have used,"

2  but we're entitled to say, "But once you knew, you still

3  used."  That's all it goes to.

4              THE COURT:  What do you say about this, Mr. Boundas?

5              MR. BOUNDAS:  First of all, we're going to have to go

6  and --

7              THE COURT:  Come on over here to the podium.  It just

8  helps the court reporter tremendously.

9              MR. BOUNDAS:  Yeah.  John Boundas again.

10             So then we're going to have to go into what Abbott

11 knew and didn't disclose at that time, why they took two more

12 years not to change the label, what kind of methods to prevent

13 pregnancy this family was undergoing two years later for a

14 child that was never born.  It didn't happen.  So what we're

15 doing is asking the jury to speculate based on something that

16 happened two years later to inform them what would or could

17 have happened two years earlier.  It's just -- you know, look,

18 they have consistently said, "No labels after this child's

19 birth.  None of our conduct after this child's birth."  Then

20 why does our mother's conduct after the birth come in?  Let's

21 draw the line and have it apply both ways.  Otherwise, we will

22 get into --

23             THE COURT:  I'm drawing the line.  It's out.  It's

24 out.  The horse is already out of the barn.  Forget it.

25             So I'm granting that one.  That's No. 4, I think.

CERTIFICATE

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 59 inclusive.

Dated at St. Louis, Missouri, this 20th day of May, 2016.

_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter